IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ROBBIE MOWBRAY,**

          **Plaintiff,**

  vs.                                  Civil Action 2:07-CV-1245
                                          Judge Holschuh
                                          Magistrate Judge King

**MICHAEL J. ASTRUE, Commissioner**
**of Social Security,**

          **Defendant.**

## REPORT AND RECOMMENDATION

       This is an action instituted under the provisions of 42 U.S.C. §§405(g), 1383, for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income. This matter is now before the Court on the plaintiff's *Statement of Errors* and the Commissioner's *Memorandum in Opposition.*

**I.**

       Plaintiff Robbie Mowbray filed his applications for benefits in December 2002 and January 2003, alleging that he has been disabled since December 11, 2002, as a result of injuries sustained in a motor vehicle accident. The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

       On December 15, 2005, an administrative hearing was held at which plaintiff, represented by counsel, appeared and testified, as did Denise Davis, M.D., who testified as a medical expert, and Lynne Kaufman, M.S., who testified as a vocational expert. In a decision dated July 26, 2006, the administrative law judge found that plaintiff's severe

impairments consist of traumatic brain injury, hepatic C, cognitive disorder NOS, adjustment disorder with depressed mood, and history of fractures to the face, left femur, and right foot. *A.R.* 25 (Finding 3).

The administrative law judge found that, from December 11, 2002, through December 2003, plaintiff lacked the residual functional capacity to sustain full time competitive work activity of any nature, including sedentary work. Since January 2004, however, plaintiff has had the residual functional capacity to perform sedentary work, subject to the following: (1) no lifting of greater than ten pounds frequently or twenty pounds occasionally; (2) no standing and/or walking for longer than thirty minutes at a time; (3) no standing and/or walking for longer than thirty minutes at a time or two hours total in a workday; (4) no more than occasional bending, squatting, or stooping; (5) no climbing of ladders or scaffolds or working at unprotected heights; and (6) no working around moving machinery or operation of automotive equipment. From a mental standpoint, plaintiff can perform simple, repetitive tasks and understand and follow simple instructions within the context of low average to average intelligence. He is only mildly impaired in his ability to relate to others. He requires a low stress work environment, consistent with a moderately limited ability to withstand work stress and pressure. A.R. 25 (Finding 6). After January 2004, plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one in the Listings. Relying on the testimony of the vocational expert, the administrative law judge found that plaintiff's residual functional capacity permits the performance of a significant number of jobs in the regional and national economies, including such jobs as assembler, clerk, and sorter. *A.R.* 24. Accordingly, the administrative

2

law judge concluded that, except for the closed period December 11, 2002, through December 2003, plaintiff is not disabled within the meaning of the Social Security Act. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on October 18, 2007.

**II.**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite

conclusion. *Longworth v. Comm'r Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005).

### III.

Plaintiff was 44 years of age at the time the administrative law judge issued her decision. *A.R.* 62. He has a high school education. *A.R.* 75. Plaintiff's past relevant work includes jobs as a construction worker, landscape laborer and meat cutter/packer. A.R. 26, 70. Prior to the accident, plaintiff also trained children in karate and lifted weights. *A.R.* 563.

Plaintiff testified at the administrative hearing that he was in a coma for eight weeks following his motor vehicle accident and his wife divorced him. *A.R.* 555. He was released from a nursing home in June 2003 and has lived with his mother and her husband since that time. *A.R.* 556-57. He has a history of drug abuse but has maintained sobriety for the most part in recent years. *A.R.* 559-64. He attends Narcotics Anonymous five times per week on average. *A.R.* 564.

On a typical day, plaintiff reads and watches televison. He used to enjoy outdoor activities such as hunting, fishing and trapping but has not been able to engage in such activities since his accident. He can no longer play basketball with his son because he cannot jump. *A.R.* 573-74.

Plaintiff also testified that he suffers from migraine headaches as a result of the facial injuries suffered in the accident. He has a constant ache in his knee and pain in his lower back and hip as a result of pins. *A.R.* 582-83. He uses a cane to walk any distance. *A.R.* 583. Problems with incontinence have been alleviated by medication.

*A.R.* 584. *See also A.R.* 414, 418-19. Memory problems have improved with medication. *A.R.* 585.

Plaintiff estimated he can walk about a quarter to half mile, using a cane, before having to rest. *A.R.* 568. He can stand ten or fifteen minutes, for a total of 3 to 4 hours, so long as he is not required to bend and if given an opportunity for a break every fifteen minutes or so. He can sit for two to three hours at a time for a total of six hours in an eight hour day, although he shifts in his seat. He can lift about twenty pounds. A.R. 568-71.

**IV.**

On December 11, 2002, plaintiff was in a motor vehicle accident in which he sustained a brain contusion, mandible fracture, mid-facial fracture, intra-cranial hemorrhage, left femur fractures, left forearm fracture and left ulnar fracture. *A.R.* 112, 124, 331, 542. A CT scan of the cervical spine revealed degenerative changes at C5-6 with evidence of disc bulge at C4-5 with likely herniation, primarily centrally at that level. *A.R.* 125. Plaintiff underwent surgical procedures for his various fractures. *A.R.* 142, 153-62. Richard Laughlin, M.D., was plaintiff's orthopedic surgeon.

Mary McCarthy, M.D., a trauma surgeon, completed a Basic Medical form for the Ohio Department of Job and Family Services on January 2, 2003. She opined that plaintiff could perform no lifting, sitting or standing/walking; he was markedly limited in his ability to push, pull, bend, reach, handle, perform repetitive foot movements and speak. *A.R.* 489-91.

Plaintiff was hospitalized until February 6, 2003, when he was transferred to a skilled nursing facility, *A.R.* 228-29, where he underwent occupational, physical and speech therapy. *A.R.* 256-318, 340-5.

On March 6, 2003, Dr. Laughlin, plaintiff's treating orthopedic surgeon, noted that x-rays revealed that the fracture of the ulna and the fractures of the femur were healing well. Dr. Laughlin allowed plaintiff to start weight bearing on the left. *A.R.* 331. On April 17, 2003, Dr. Laughlin allowed plaintiff to progress to a cane. *A.R.* 330.

X-rays taken in June 2003 showed that all fractures had healed and plaintiff was discharged from the nursing facility. *A.R.* 329.

On August 8, 2003, James Tanley, Ph.D., a neuropsychologist, evaluated plaintiff at the request of the state agency. Dr. Tanley observed that plaintiff was cooperative, coherent, relevant, goal oriented, alert, and neither exaggerated nor minimized his symptoms. There was no evidence of eccentricities of manner, impulsivity, compulsiveness, anhedonia, mood swings, inflated self esteem, grandiosity, motor or autonomic signs of anxiety, apprehension, vigilance, scanning, fear, sense of impending doom, thought disorder, psychotic perceptual disturbance, or feelings of guilt, hopelessness, or worthlessness. Plaintiff's recent and remote memory were in the average range; judgment was thought to be sufficient to make life decisions. Testing on the WAIS-III revealed a verbal IQ score of 100, a performance IQ score of 85 and a full scale IQ score of 94. Dr. Tanley noted that the 15 point difference between plaintiff's verbal and performance IQ scores was significant and could reflect a learning disorder and/or the effects of his head injury. Dr. Tanley diagnosed a cognitive disorder, NOS, and chronic adjustment disorder with depressed mood. Dr. Tanley opined that

plaintiff's ability to relate to others was mildly impaired and his ability to withstand the stress and pressure of daily work was moderately impaired. Plaintiff had the ability to understand and follow simple instructions and to perform simple, repetitive tasks. *A.R.* 357-60.[1]

Vivek Kadyan, M.D., a specialist in physical medicine and rehabilitation at the Ohio State University Brain Injury Clinic, began treatment of plaintiff shortly after plaintiff's accident. Plaintiff reported to Dr. Kadyan on September 8, 2003, that he was still experiencing significant pain, difficulty with sleep and anxiety. He was independent in his daily activities. *A.R.* 366.

On September 10, 2003, J. Rod Coffman, Ph.D., a state agency psychologist, opined that plaintiff had no severe mental impairments. According to Dr. Coffman, plaintiff's cognitive mental disorder caused only mild limitation in activities of daily living, social functioning, and concentration, persistence, and pace. There was no evidence of repeated episodes of decompensation. *A.R.* 376-88.

Plaintiff saw Dr. Laughlin for follow up of his fractures on September 18, 2003. Although he reported doing reasonably well at that time, he still experienced hip and knee pain. He tried running three miles and was very sore for three days afterwards. Dr. Laughlin felt that plaintiff was doing well "in light of his injuries." *A.R.* 537.

---

[1] Plaintiff argues that the administrative law judge erred in finding that the I.Q. scores reported by Dr. Tanley did not establish an organic mental disorder, as defined in Listing 12.02A(7), when compared with I.Q. scores, ranging from 114 to 122, obtained on tests administered when plaintiff was 11 and 13 years of age. *See A.R.* 102-03. The administrative law judge rejected plaintiff's school-age scores, reasoning that the Listing for determining mental retardation in children, Listing 112.00(D)(10), specifies that children's I.Q. scores are considered valid for only one or two years. Regardless, Listing 12.02A(7) also requires that the "B" or "C" criteria also be met. The administrative law judge's conclusion that plaintiff's mental impairment failed to meet these criteria, *see, A.R.* 20-21, is supported by Dr. Tanley's examination findings and conclusions.

7

On September 19, 2003, Kitty Roher, LISW, a social worker with Dodd Hall at the OSU Brain Injury Clinic, noted, "Emotionally, depression and anxiety are significant. Cognitively memory, attention and higher level executive functioning remains a significant barrier to return to productivity." *A.R.* 389. In October 2003, Dr. Kadyan noted an antalgic gait in examination and complaints of significant pain, especially in the left knee. *A.R.* 364.

On October 7, 2003, Plaintiff underwent surgery for removal of hardware from his left distal femur. *A.R.* 390.

In a questionnaire completed on October 11, 2003, Dr. Kadyan opined that plaintiff could walk less than 2 blocks without resting, sit for 30 minutes at a time for a total of 4 hours, stand for 20 minutes at a time for a total of 2 hours, occasionally lift up to 20 pounds and frequently lift less than 10 pounds, occasionally bend, squat, crawl and reach above shoulder level and could never climb stairs or ladders or work at heights. Plaintiff's condition would likely deteriorate if he were placed under stress, particularly the stress associated with a job. *A.R.* 394-95.

Plaintiff saw Dr. Laughlin on October 23, 2003, for follow up. He was feeling better and had reduced his Vicodin use from 8 to 6 doses per day. *A.R.* 535. Plaintiff again reported on November 20, 2003, that he was feeling better and was taking less Vicodin. According to Dr. Laughlin, plaintiff's incisions were well healed and he had full extension; he was making some progress at therapy. *A.R.* 534.

On December 3, 2003, Donna Hobbs, M.D., a psychiatrist, evaluated plaintiff for complaints of anxiety. Plaintiff explained that after his December 2002 accident, he lost his wife and job and lost full

access to his children.  He had also been indicted for vehicular homicide.  He had difficulty eating because of malocclusion.  On mental status examination, plaintiff's mood was not depressed, but he was anxious; his thought processes were logical and sequential; there was no suicidal ideation; insight was limited; judgment and concentration were poor; intellectually, plaintiff appeared to be average.  Dr. Hobbs diagnosed anxiety disorder, nos, rule out substance-induced anxiety disorder, polysubstance abuse, nicotine dependence, rule out caffeine-related sleep and anxiety disorder, and personality disorder, nos, with antisocial traits. She recommended antidepressants and antipsychotics to deal with anxiety rather than anxiolytics due to plaintiff's history of polysubstance abuse.  Plaintiff declined the recommendation. *A.R.* 402-04.

Plaintiff received outpatient mental health treatment in November 2003 and in May, June, July, October and November 2004. *A.R.* 396-401.

On December 6, 2003, Dr. Laughlin reported that plaintiff had persistent knee pain and pain with walking, climbing and extended standing; he was unable to crawl or kneel.  Although Dr. Laughlin did not feel qualified to make a full prognosis regarding plaintiff's head injury, he noted that plaintiff had cognitive deficits and difficulty with attention, concentration and focus.  Dr. Laughlin opined that it would be difficult for plaintiff to maintain a job due to his head injury; it was reasonable for plaintiff to pursue a claim of disability based on the combination of his head injury and multilevel femur fracture.  According to Dr. Laughlin, plaintiff could walk 2 to 3 blocks without rest; sit for two hours at a time for a total of 4 hours; stand

9

for 45 minutes at a time for a total of 2 hours; frequently lift less than 10 pounds and occasionally lift 10 pounds; and occasionally bend. Plaintiff could never squat, crawl or climb stairs or ladders. Plaintiff's condition would likely deteriorate if he were placed under stress, particularly stress associated with a job. Moreover, plaintiff's pain, fatigue or other symptoms would frequently interfere with attention and concentration. *A.R.* 325-28.

On December 15, 2003, plaintiff reported to Dr. Kadyan that his pain and mood were much better, leading plaintiff to consider stopping some of his medications. *A.R.* 362.

Plaintiff saw Matthew T. Lawless, M.D., another physician in Dr. Laughlin's practice, on February 18, 2004, for left knee pain that increased with activity. Dr. Lawless noted that plaintiff walked with a very mild limp when walking quickly. X-rays showed anatomic alignment of the fractures. Dr. Lawless diagnosed left disuse atrophy and recommended strengthening exercises. *A.R.* 532-33.

Plaintiff continued with physical therapy from April 29, 2003 to May 28, 2003. *A.R.* 340-351.

On March 8, 2004, plaintiff reported to Dr. Kadyan that he was doing much better. His mood and attention were improved. On physical examination, Dr. Kadyan noted an antalgic gait. *A.R.* 361.

In April 2004, plaintiff underwent a Lefort I osteotomy with advancement, septoplasty and removal of infected mandibular hardware. *A.R.* 410. The following month, plaintiff reported to Dr. Kadyan that his mood was good and his attention was stable. His outlook toward return to work and future were improved. *A.R.* 425.

10

In November 2004, plaintiff established care with Adil Yamour, M.D., for left leg and hip pain and anxiety. Dr. Yamour assessed normal physical findings on examination and prescribed Percocet and Xanax. *A.R.* 440. In December 2004 and January, March, April, May and June 2005, Dr. Yamour reported normal physical examinations. *A.R.* 436-40, 539-41.

On January 8, 2005, plaintiff underwent surgical repair of a left brachial artery pseudoaneurysm and infection, caused by intravenous drug use. *A.R.* 432. The following month, plaintiff tested positive for hepatitis C. *A.R.* 467.

Plaintiff received mental health treatment, including group therapy, at a Veterans Administration facility in May and June 2005. *A.R.* 451-63.

Plaintiff saw W. Jerry Mysiw, M.D., at the Head Injury Clinic at the Ohio State University Department of Physical Medicine and Rehabilitation on June 1, 2005. Plaintiff indicated that he was doing well. He described his mood as stable, and his memory and attention as improving. His anxiety symptoms were stable, and headaches and sleep difficulties were improved with medication. *A.R.* 485-88.

At the administrative hearing, Dr. Davis, a physical medicine and rehabilitation specialist, testified that plaintiff suffered a traumatic brain injury, fractured left femur and multiple facial fractures on December 11, 2002. *A.R.* 589-90. Plaintiff also suffered a recent right hairline fracture of his foot and developed cellulitis of his left arm in January 2005, as a result of drug abuse. *Id.* According to Dr. Davis, although plaintiff's brain injury was severe, he had made good progress in recovery and was now functioning at a fairly high level. *A.R.* 592. She also noted that Dr. Mysiw indicated in June 2005 that

11

plaintiff's memory and attention were improving with medication. *Id.* Plaintiff's impairments, whether considered individually or in combination, neither met nor equaled any listing. *Id.* For one year following the accident, plaintiff was incapable of work. *A.R.* 593. After December 2003, however, plaintiff could perform sedentary work, could sit thirty minutes at a time and could stand or walk thirty minutes at a time for a total of two hours in an eight hour day. He could lift ten to twenty pounds occasionally and ten pounds frequently. He could occasionally bend, squat or stoop. He could not climb ladders or scaffolds, work around unprotected heights or moving machinery. *A.R.* 590. He could not drive because he lacked a license. *Id.*

Plaintiff saw Dr. Mysiw again on January 25, 2006, following the administrative hearing. Plaintiff complained of short term memory deficits and problems with focused and divided attention. Plaintiff offered several "examples of events ... over the past several months for which he has absolutely no memory." *A.R.* 542. Plaintiff also complained of frequent mild headaches. *Id.* Dr. Mysiw diagnosed traumatic brain injury resulting in cognitive deficits, anxiety disorder and personality change; mood disorder, controlled; post-traumatic headaches with fair control; and traumatic left hip and knee osteoarthritis. Dr. Mysis concluded:

> Plaintiff and I discussed his work status. He remains temporarily totally disabled. Given this gentlemen's considerable physical limitations related to the left hip and knee osteoarthritis and his back condition and the balance issues that persist due to both the brain injury and his lower limb arthritic conditions, I believe that his lifting capacities are at best sedentary. However, in view of his work history, education and residual, permanent cognitive deficits, I suspect that this gentlemen is in fact unemployable.

12

*A.R.* 542-544.

**IV.**

The administrative law judge concluded that plaintiff was disabled from the time of his December 2002 motor vehicle accident through December 2003. *A.R.* 21. Thereafter, however, the administrative law judge adopted Dr. Davis' assessments to conclude that plaintiff's impairments neither met nor equaled any listed impairment. Moreover, the administrative law judge found that plaintiff had the residual functional capacity for a reduced range of sedentary work as articulated by Dr. Davis. *A.R.* 22.[2]

The administrative law judge criticized Dr. Mysiw's January 2006 suggestion of disability because plaintiff "had reported a history of very significant amnesia that is simply not supported by the longitudinal treatment record." *Id.*

Opinions of treating physicians must be accorded controlling weight if they are "well-supported by medically-acceptable and clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§404.1527(d)(2); 416.927(d)(2). If the administrative law judge finds that either of these criteria have not been met, he is then required to apply the following factors in determining the weight to be given a treating physician's opinion: "The length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the

---

[2]The vocational expert testified that this residual functional capacity would permit a claimant with plaintiff's vocational profile to perform work that exists in significant numbers, including such jobs as assembler, clerk and sorter jobs. *A.R.* 602.

13

opinion with the record as a whole, and the specialization of the treating source. ..." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). In this regard, the administrative law judge is required to look at the record as a whole to determine whether substantial evidence is inconsistent with the treating physician's assessment. *See* 20 C.F.R. §§404.1527(d)(2)(4); 416.927(d)(2)(4).

The administrative law judge's decision fails to comply with *Wilson* or the regulations. That decision makes no reference to or description of the legal criteria governing consideration of a treating physician's opinion, nor does it reflect the proper evaluation of Dr. Mysiw's opinions.

Moreover, Dr. Davis, upon whose testimony the administrative law judge relied in finding that plaintiff could perform a reduced range of sedentary work beginning in January 2004, did not have the benefit of Dr. Mysiw's subsequent report.

It is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and this action be **REMANDED** to the Commissioner for further consideration of Dr. Mysiw's January 2006 opinion.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within ten (10) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within ten (10) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).


January 23, 2009                              *s/Norah McCann King*
                                                 Norah McCann King
                                            United States Magistrate Judge